**In re C.W. MINING COMPANY, dba Co–Op Mining Company, Debtor.**

**Kenneth A. Rushton, Chapter 7 Trustee, Plaintiff,**

v.

**Woodbury & Kesler, P.C., a Utah Professional Corporation; Russell S. Walker, and individual, Defendants.**

**Bankruptcy No. 08–20105. Adversary No. 09–2382.**

United States Bankruptcy Court, D. Utah.

Oct. 1, 2010.

---

**27.** 2 Collier on Bankruptcy ¶ 105.02[2] (Alan N. Resnick and Henry J. Sommer, eds., 16th ed. rev. 2009).

Mona Lyman Burton, Holland and Hart, Salt Lake City, UT, for Plaintiff.

David R. Williams, Woodbury & Kesler, Salt Lake City, UT, for Defendants.

**MEMORANDUM DECISION GRANTING, IN PART, AND DENYING, IN PART, THE TRUSTEE'S MOTION FOR PARTIAL SUMMARY JUDGMENT REGARDING ATTORNEY FEES AND DISCLOSURE OF FEES**

R. KIMBALL MOSIER, Bankruptcy Judge.

The plaintiff, Kenneth A. Rushton, chapter 7 trustee (Trustee) in the bankruptcy case of C.W. Mining Company (Debtor) filed a Motion for Partial Summary Judgment (Summary Judgment Motion) asking the Court to require Woodbury & Kesler, P.C. (Woodbury), and Russell S. Walker (Walker), an attorney and shareholder of Woodbury to (1) disgorge all fees paid to Woodbury and Walker (collectively Defendants) during the pendency of the bankruptcy case, and (2) turnover certain documents the Defendants claim are privileged. This memorandum decision addresses the Trustee's Summary Judgment Motion with respect to disgorgement of all fees paid to the Defendants during the pendency of the above-captioned bankruptcy case and the Court will grant, in part, and deny, in part, the Trustee's Summary Judgment Motion on this issue.

**I. JURISDICTION & LEGAL STANDARD**

This Court has jurisdiction under 28 U.S.C. §§ 1334 and 157(a), and venue is appropriate under 28 U.S.C. §§ 1408 and 1409. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (B), (E), (H) and (O) and the Court may enter a final order.

Federal Rule of Civil Procedure 56(c), incorporated into this adversary proceeding by Federal Rule of Bankruptcy Procedure (Rule) 7056, makes summary judgment appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."[1] In applying this standard, the Court "examine[s] the record and all reasonable inferences that might be drawn from it in the light most favorable to the non-moving party."[2] There is no genuine issue of fact "[w]here the record

---

1. FED.R.CIV.P. 56(c).

2. *T–Mobile Cent., LLC v. Unified Gov't of Wyandotte County*, 546 F.3d 1299, 1306 (10th Cir.2008) (internal quotes omitted).

taken as a whole could not lead a rational trier of fact to find for the non-moving party." [3] Summary judgment must issue against a party when that party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." [4]

## II. CASE BACKGROUND

This bankruptcy case was commenced by the filing of an involuntary chapter 11 [5] petition. An order for relief was eventually entered and the case was subsequently converted to a case under chapter 7 at which time the Trustee was appointed. Defendants represented the Debtor while the involuntary petition was pending, after the order for relief was entered, and after the case was converted.

The Summary Judgment Motion seeks an order requiring Defendants to disgorge all payments they received in connection with the bankruptcy case regardless of the source of payment. The Trustee contends that under §§ 327, 328, and 329 and Rules 2014 and 2016, the Defendants suffered from a conflict of interests, failed to disclose payments received, failed to disclose the source of payments, willfully violated the automatic stay, and paid themselves without the Court's permission. The Trustee further asserts that the payments received by Defendants from third parties Standard Industries, Inc. (Standard) and Hiawatha Coal Company, Inc. [6] (Hiawatha) are in the nature of a loan from Standard and Hiawatha to the Debtor and should be treated as payments received by Defendants from the Debtor and disgorged to the Trustee.

Defendants argue that they were permitted to be paid without court order prior to the Order for Relief, that Defendants did not suffer from a conflict of interest, that the compensation paid to Defendants was not excessive, that no violation of the automatic stay occurred, that the fees paid by Standard and Hiawatha were not the Debtor's funds, and that the Trustee lacks standing to recover funds paid to Defendants by third parties.

The Summary Judgment Motion and oral arguments were presented to the Honorable Judith A. Boulden on April 5, 2010. The Summary Judgment Motion was taken under advisement and on April 20, 2009, Judge Boulden recused herself in the C.W. Mining bankruptcy case. As a result, the bankruptcy case and all related adversary proceedings were reassigned to this Court. A renewed hearing on the Trustee's motion for partial summary judgment was set for May 14, 2010, and the matter was taken under advisement.

## III. UNDISPUTED FACTS

An involuntary chapter 11 petition was filed against the Debtor on January 8, 2008. On January 29, 2008, the Defendants filed an Ex Parte Motion for Order Authorizing Employment of Special Counsel (Employment Application) for the Debtor. The Defendants' Employment

---

**3.** *Weigel v. Broad,* 544 F.3d 1143, 1157 (10th Cir.2008) *(quoting Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)) (internal quotes omitted).

**4.** *United States ex rel. Burlbaw v. Orenduff,* 548 F.3d 931, 944 (10th Cir.2008) *(quoting Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)) (internal quotes omitted).

**5.** Future statutory references herein are to Title 11 of the United States Code, unless otherwise stated.

**6.** Standard and Hiawatha assert significant claims against the estate and are adverse parties in numerous adversary proceedings brought by the Trustee.

Application represented that there were no conflicts of interest that would preclude the Defendants from representing the Debtor if an order for relief was entered, that they were disinterested under 11 U.S.C. § 101(14), that they had received a $15,000 retainer, that the Defendants would seek supplemental retainers to prevent funds in their trust account from falling below $7,000, and that the Debtor would be paying the Defendants for their services.

The Defendant's Employment Application stated the following:

3. On January 18, 2008, CW through its authorized officers and directors retained Special Counsel to assist it in the above-captioned involuntary Chapter 11 case and in making initial preparations to administer a Chapter 11 bankruptcy case in the event an Order for Relief is entered in the case.

4. CW believes that, pursuant to the provisions of 11 U.S.C. Section 303(f), until the Order for Relief is entered, CW is authorized to operate its business and to continue to use, acquire, or dispose of property as if an involuntary case concerning the debtor had not been commenced, including the retention and payment of legal counsel.

5. In the abundance of caution and to seek pre-authorization for the appointment of Special Counsel in the event an Order for Relief is entered in this case, CW seeks an order authorizing the appointment of Special Counsel in the above-captioned involuntary case and pre-authorizing and approving the appointment of Special Counsel to CW as debtor or debtor-in-possession [sic] in the event an Order for Relief is entered herein.

6. CW believes Special Counsel can provide to CW, as Respondent in the involuntary Chapter 11 case and to CW as debtor-in-possession [sic] in the event an Order for Relief is entered herein with expert and independent guidance, assistance and advice with respect to its defenses in the involuntary case and with respect to the timely and adequate prosecution of a Chapter 11 case in the event an Order for Relief is entered herein, including (a) the discharge of duties of CW as debtor or debtor-in-possession [sic], (b) the oversight and management of estates assets, (c) the development of an adequate disclosure statement and acceptable plan of reorganization or liquidation, (d) the prosecution and resolution of objections to claims[,] (e) the taking of every other action associated with the administration of a Chapter 11 case before and after the entry of an Order for Relief and as otherwise needed to achieve the confirmation and implementation of a Chapter 11 plan of reorganization, or liquidation, and (f) with relation to any core matter, related case, contested matter, or adversary proceeding that is not otherwise assigned to general counsel.[7]

Mr. Walker's affidavit in support of the Debtor's Employment Application further stated that the Defendants

are disinterested within the meaning of 11 U.S.C. § 101(14) and Section 327 .... [and that] in the event an Order of Relief is entered or the case is subsequently converted from a Chapter 11 case under another Chapter of the Bankruptcy Code, the funds in the trust account will become property of the bankruptcy estate, but will remain in the trust account as collateral securing the

---

**7.** Ex Parte Mot. for Order Auth. Employ. Special Counsel ¶¶ 3–6, *In re C.W. Mining Co.,* Case no. 08–20105, Dkt. # 9.

payment of any unpaid Woodbury & Kesler fees and costs allowed by the Court, owed by CW upon dismissal or conversion of the case, or subject to fee applications or orders approving fee applications of Woodbury & Kesler.[8]

On March 7, 2008, Debtor filed a supplemental memorandum in support of the appointment of Defendants as special litigation counsel. On March 13, 2008, the Court entered an order authorizing the employment of Defendants as special counsel. The Order appointing Defendants provided that in the event the Court enters an order for Relief in the involuntary chapter 11 case, Defendants may reapply for appointment as Special Counsel for the Debtor or debtor in possession. On September 25, 2008, the Court entered an order for relief under chapter 11 of the Bankruptcy Code.

Defendants filed Official Form B203, Disclosure of Compensation of Attorney for Debtor, on October 31, 2008. In the Disclosure, Defendants represented that they agreed to accept $0.00 for legal services, received $0.00 prior to the filing of the Disclosure, that the balance due was $0.00, the source of the compensation was hourly, and that the source of compensation to be paid is hourly.[9] Defendants' Disclosure of Compensation of Attorney for Debtor(s) was certified by Walker as a complete statement.

On November 13, 2008, the Debtor's bankruptcy case was converted to a case under chapter 7 of the Bankruptcy Code. No amended application for appointment of counsel or supplement to application for appointment of counsel has been filed.

The same day this matter was argued to the Court, April 5, 2010, Defendants filed a Disclosure of Compensation Paid to Attorney for Debtor.[10] This disclosure revealed that the Defendants had been paid $22,000 by the Debtor, $193,830.27 by Standard and $50,360.72 by Hiawatha.[11]

Defendants have never filed a fee application or provided any type of information to this Court to enable the Court to consider the reasonableness of the compensation paid to the Defendants. Defendants have also failed to file any type of description of services to enable this Court the determine whether they were disinterested or represented an interest adverse to the estate or whether they represented or held any interest adverse to the debtor or the estate with respect to the matters on which they were employed during the pendency of the chapter 11 case.

## IV. DISCUSSION

The Defendants' involvement in this case began with an affirmative representation to this Court that they were professionals qualified to represent the Debtor under § 327 and that they would remain qualified to represent the Debtor in chapter 11 if an order for relief were entered. Defendants' involvement metamorphosed from this affirmative representation that they were, and would be, free of conflicts, into an affirmative misrepresentation to this Court regarding the payments they received and a failure to disclose conflicts and payments they received.

 The Bankruptcy Code and Rules of Bankruptcy Procedure are replete with provisions relating to employment and payment of professional persons, in particular attorneys. Attorneys for debtors are not only subject to provisions applicable to

---

8. Russell Walker Aff. ¶¶ 3, 10, *In re C.W. Mining,* Dkt. # 10.

9. The relevant portion of Defendant's Form B203 is attached as Appendix A.

10. Dkt. # 1244, *In re C.W. Mining.*

11. A summary of payments received by the Defendants is attached as Appendix B.

all professionals but are subject to § 329 and Rule 2016(b) which specifically apply to attorneys for debtors. No other professionals have a specific code section or rule relating to their fees and transactions with debtors. When read as a whole the intent and spirit of these provisions is clear. Attorneys representing debtors are required and expected to fully and candidly disclose all of their agreements relating to compensation, the amount of compensation paid or agreed to be paid, and the source of payment. Attorneys who seek to be employed under § 327(a) may not hold or represent an interest adverse to the estate and must be disinterested. If an attorney representing a debtor fails to comply with all applicable provisions of the Bankruptcy Code or Rules of Bankruptcy Procedure then denial of fees and/or sanctions may be appropriate.

## A. Applicability of § 327(a) and § 328(c).

The Defendants assert that there is no requirement that they comply with § 327 and that "[d]uring the 'gap'[12] period before an order for relief is entered, a debtor is free to retain attorneys to represent it in the involuntary case and pay the attorneys."[13] The Defendants rely on the case of *In re Rundlett*[14] and § 303(f) in support of this position. Section 303(f) provides

Notwithstanding section 363 of this title, except to the extent that the court orders otherwise, and until an order for relief in the case, any business of the

debtor may continue to operate, and the debtor may continue to use, acquire, or dispose of property as if an involuntary case concerning the debtor had not been commenced.

The Defendants position is premised on the notion that § 303(f) eliminates the debtor's duties and any scrutiny and oversight imposed by the Bankruptcy Code. The Defendant's reliance on § 303(f) and their assertion that a debtor in an involuntary chapter 11 case is free to retain and pay attorneys without court approval is misplaced. The definitions and provisions in the Bankruptcy Code clearly provide that if no trustee has been appointed, a debtor in an involuntary chapter 11 case is a debtor in possession, even during the "gap" period.

▉▉ An involuntary chapter 11 case is commenced when the petition is filed.[15] As defined in § 101(13), "debtor" means a person concerning which a case under the bankruptcy code has been commenced.[16] A person becomes a debtor when an involuntary petition is filed, not when the order for relief is entered. A "debtor in possession" means a debtor in a chapter 11 case, except when a person that has qualified under § 322 is serving as a trustee.[17] There is no ambiguity in the foregoing provisions and this Court is bound by these provisions. The plain meaning of legislation should be conclusive, except in the rare cases in which the literal application of a statute will produce a result

---

12. The "gap" period constitutes the time between when an involuntary petition has been filed and an order of relief granting the involuntary petition has been entered.

13. Mem. Opp'n to Mot. Summ. J. 6, *Rushton v. Woodbury & Kesler, P.C. (In re C.W. Mining)*, Case no. 09–2382, Dkt. # 32 (*citing In re Rundlett*, 137 B.R. 144, 147 (Bankr.S.D.N.Y. 1992)).

Defendants' argument is inconsistent with the facts in this case. The Defendants were

employed pursuant to this Court's order so the argument that they did not need to comply with § 327 is not apposite.

14. 137 B.R. 144.

15. § 303(a).

16. § 101(13).

17. § 1101(1)

demonstrably at odds with the intentions of its drafters.[18] It is well established that when a statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms.[19] Treating a debtor in an involuntary chapter 11 case during the "gap" as a debtor in possession is not demonstrably at odds with the legislative intent, is not absurd, and does no violence to the Bankruptcy Code.

■ Defendants attempt to create ambiguity or inconsistency by arguing that § 303(f) allows a debtor, during the "gap" period, to conduct business as though no bankruptcy had been filed and may therefore employ and pay attorney's without court approval. Section 303(f) is similar to § 363(c)(1) but § 303(f) applies specifically to involuntary cases during the "gap" period. Section 363(c)(1) authorizes a trustee to "enter into transactions, including the sale or lease of property of the estate, in the ordinary course of business, without notice or a hearing, and may use property of the estate in the ordinary course of business without notice or a hearing." Although § 363(c)(1) authorizes the trustee, or debtor in possession, to enter into transactions and use, sale or lease property of the estate without notice and a hearing, it does not nullify other Bankruptcy Code provisions including those applicable to employment and compensation of attorneys for the trustee, or debtor in possession, and does not authorize payment of professional fees without court approval. Similarly, although § 303(f) does not use the term "ordinary course of business," it authorizes the debtor, or debtor in possession, to continue its business operations "as if an involuntary case concerning the debtor had not be commenced;" it does not nullify other Bankruptcy Code provisions including those applicable to employment and compensation of attorneys for the debtor or debtor in possession.

■ A debtor in possession has the rights, other than the right to receive compensation, and shall perform all the functions and duties of a trustee serving in a chapter 11 case.[20] Section 327(a) authorizes a debtor in possession, with a court's approval, to employ one or more attorneys that do not or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the debtor in possession in carrying out the debtor-in-possession's duties under the Bankruptcy Code.[21] An attorney representing a debtor in an involuntary chapter 11 case during the "gap" period must comply with applicable sections of the Bankruptcy Code in order to be employed and compensated. The debtor in possession may also employ special counsel under § 327(e), provided such attorney does not represent or hold any interest adverse to the debtor or to the estate with respect to the matter on which such attorney is to be employed. Compensation of attorneys employed under § 327(a) or (e) is subject to court approval and §§ 328 and 330. The attorney for the debtor in possession must also comply with § 329(a) and Rule 2016(b).

■ The commencement of a case under § 303 creates an estate.[22] Estates created under § 303 are no different than estates created under § 301. A debtor in possession—with all the rights, powers, duties,

18. *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 243, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989).

19. *Lamie v. U.S. Tr.*, 540 U.S. 526, 534, 124 S.Ct. 1023, 157 L.Ed.2d 1024 (2004).

20. § 1107(a).

21. § 327(a).

22. § 541(a).

and functions of a trustee—is the representative of the estate.[23] All of these Bankruptcy Code provisions are harmonious and protect the interests of creditors and the estate. "[I]f a debtor remains in possession—that is, if a trustee is not appointed—the debtor's directors bear essentially the same fiduciary obligation to creditors and shareholders as would the trustee for a debtor out of possession."[24] Because of the fiduciary duties imposed on debtors in possession, their attorneys must be disinterested and not represent any interest adverse to the estate. This requirement is equally applicable to attorneys for an involuntary debtor in possession as a voluntary debtor in possession.

▇ Adopting Defendant's argument would allow debtors in possession to employ attorneys who may not be disinterested or may represent an interest adverse to the estate and pay their fees without any court oversight or approval. The Defendants attempt to create a void where attorneys for an involuntary debtor in possession are not subject to the standards clearly imposed by the Bankruptcy Code. In an involuntary chapter 11 case, the debtor in possession has little or no interest in being in bankruptcy and may have little incentive to act openly and candidly with a court and parties in interest. The court and parties in interest in an involuntary case have a great interest in seeing that debtors in possession fulfill their fiduciary duties. Due to the lack of alignment of incentives, a court must ensure compliance by all parties with the Bankruptcy Code.

The Defendants argue that they were private attorneys for the Debtor and their employment and receipt of fees was not subject to this Court's approval. Even if the Defendants' current position were supported by the Bankruptcy Code it is contrary to the Defendants' affirmative representations to this Court and the actual events in this case. Defendant's were employed pursuant to § 327.[25] Although the Defendants were employed as special counsel, the scope of their employment was extremely broad. In their Employment Application the Defendants represented to this Court that they held no conflict of interest that would disqualify them from representing the Debtor in a chapter 11 case. Defendants further represented that their fees would be subject to Court review if an order for relief were entered. Pursuant to their Employment Application, Defendants represented that they would remain disinterested and not represent any interest adverse to the estate. The Defendants were required to remain disinterested and not represent any interest adverse to the estate and apply to this Court for compensation.

The case authority relied on by Defendants is distinguishable from the facts in this case. In the *Rundlett* case, counsel represented the debtor in an involuntary chapter 7 case which was voluntarily converted to a chapter 11 case before the order for relief was entered. Counsel for the debtor was paid during the chapter 7 "gap" period. Debtors in an involuntary chapter 7 case are not debtors in possession, are not authorized to employ professionals, and are not restricted by §§ 327 and 330. Permitting debtors to employ and compensate attorneys without court approval during the "gap" period in a

---

23. § 323.

24. *Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 105 S.Ct. 1986, 85 L.Ed.2d 372 (1985).

25. The Employment Application made no reference to the statutory authority for employment but § 327 was the only basis for the Court to authorize Defendants' employment. Mr. Walker's affidavit in support of the Employment Application did reference § 327.

chapter 7 case is not inconsistent with requiring court approval for employment and compensation of attorneys during the "gap" period in a chapter 11 case. The Bankruptcy Code does not impose the same fiduciary duties on debtors in chapter 7 cases as it imposes on debtors in possession in chapter 11.

■ The standards of disinterestedness required by bankruptcy courts for professionals who choose to represent debtors in bankruptcy are well established and are described in *In re Roberts*[26]. The *Roberts* definition of disinterested has been adopted by the Tenth Circuit Bankruptcy Appellate Panel in *In re Cook*[27] to mean that an attorney must not: (1) possess or assert any economic interest that would tend to lessen the value of the bankruptcy estate or that would create either an actual or potential dispute in which the estate is a rival claimant; or (2) possess a predisposition under the circumstances that render such a bias against the estate. The term disinterested is broad enough to exclude an attorney with some interest or relationship that would even faintly color the independence and impartial attitude required by the Code and Bankruptcy Rules.

*Cook* goes on to state that § 328(c) authorizes a penalty for failing to avoid a disqualifying conflict of interest. Section 328(c) states

> Except as provided in section 327(c), 327(e), or 1107(b) of this title, the court may deny allowance of compensation for services and reimbursement of expenses of a professional person employed under section 327 or 1103 of this title if, at any time during such professional person's employment under section 327 or 1103 of this title, such professional person is

not a disinterested person, or represents or holds an interest adverse to the interest of the estate with respect to the matter on which such professional person is employed.

■ The court has no duty to investigate a prospective attorney's actual or potential conflicts. Disgorgement of all fees is warranted even though attorneys provide a significant benefit to the estate where the attorney's application for appointment failed to disclose a fee arrangement with a creditor.[28]

In the present case it is undisputed that Defendants had a fee agreement with at least one significant creditor of the Debtor. The Defendants have not yet disclosed the terms of that agreement or any facts relating to Defendants' communications with the creditors who paid their fees. Even though the Defendants assert they held no disqualifying interest, the assertion is without factual support and is entirely devoid of substance.

## B. Applicability of § 329(a) and Rule 2016(b).

■ Even if §§ 327, 328 and 330 were not applicable to Defendants in this case, § 329(a) and Rule 2016(b) are applicable to all attorneys representing a debtor in a case under the Bankruptcy Code. Section 329(a) provides

> Any attorney representing a debtor in a case under this title, or in connection with such a case, whether or not such attorney applies for compensation under this title, shall file with the court a statement of the compensation paid or agreed to be paid, if such payment or agreement was made after one year before the date of the filing of the petition, for

**26.** 46 B.R. 815 (Bankr.D.Utah 1985).

**27.** *Winship v. Cook (In re Cook),* 223 B.R. 782 (10th Cir. BAP 1998).

**28.** *See id.* at 793.

services rendered or to be rendered in contemplation of or in connection with the case by such attorney, and the source of such compensation.

Section 329(a) clearly provides that, beginning one year prior to the bankruptcy petition and continuing thereafter, an attorney representing a debtor must disclose to the court all fees it is paid or agrees to be paid in connection with the case. The statute could not be clearer. Simply put, a debtor's attorney is required to disclose to the court all fees it is paid or agrees to be paid during the year prior to the petition date and all fees it is paid or agrees to be paid after the petition date. The legislative history for § 329 makes clear why attorneys should be subject to scrutiny. "Payments to a debtor's attorney provide 'serious potential' for both 'evasion of creditor protection provisions of the bankruptcy laws' and 'overreaching by the debtor's attorney.' " [29]

Rule 2016(b) establishes the procedure for filing the statement required by § 329(a). Rule 2016(b) states:

*Disclosure of Compensation Paid or Promised to Attorney for Debtor.* Every attorney for a debtor, whether or not the attorney applies for compensation, shall file and transmit to the United States trustee within 15 days after the order relief, or at another time as the court may direct, the statement required by § 329 of the Code including whether the attorney has shared or agreed to share the compensation with any other entity. The statement shall include the particulars of any such sharing or agreement to share by the attorney, but the details of any agreement for the sharing of the compensation with a member or regular associate of the attorney's law firm shall not b required. A supplemental statement shall be filed and transmitted to the United State trustee within 15 days after any payment or agreement not previously disclosed.[30]

In the present case, Defendants should have filed a 2016(b) statement on or before October 13, 2008.

Defendants filed an Official Form B203, Disclosure of Compensation of Attorney for Debtor (Disclosure), on October 31, 2008, disclosing their receipts from the Debtor of $0.00. Defendants argue that the Disclosure is accurate because "the form of Compensation Statement clearly asks for the compensation paid 'within one year before the petition in bankruptcy . . . .' " [31] The Defendants' interpretation is at best disingenuous. Even in the light most favorable to the Defendants, the Disclosure is incorrect and misleading. Form B203 specifically incorporates § 329(a) and Rule 2016(b). Official Form B203 clearly asks for all compensation paid "within one year before the filing of the petition in bankruptcy, or agreed to be paid to . . . , for services rendered or to be rendered on behalf of the debtor(s) in contemplation of or in connection with the bankruptcy case. . . ." The form also asks for all compensation received "prior to the filing" of Official Form B203. At the time the Disclosure was filed, Defendants had agreed

---

**29.** H.R.Rep. No. 595, 95th Cong., 1st Sess. 329 (1977); S.Rep. No. 989, 95th Cong., 2d Sess. 39 (1978), *reprinted in* 3 Collier on Bankruptcy ¶ 329. LH (Alan N. Resnick & Henry J. Sommer eds., 16th ed.).

**30.** Rule 2016 was amended in December 2009 changing the deadline to file the statement from 15 days to 14.

**31.** Mem. Opp'n to Mot. Summ. J. 11, *Rushton v. Woodbury & Kesler, P.C. (In re C.W. Mining),* Case no. 09–2382, Dkt. # 32 *(quoting* Official Form B203, Disclosure of Comp. of Att'y for Debtor, *available at* http://www.utb. uscourts.gov/clerks_office/forms/b203.pdf).

to accept $52,993.45 plus additional fees at an hourly rate and had received $52,993.45 prior to the filing of the Disclosure from the Debtor and Standard (a major secured creditor). The source of future compensation was agreed to be Standard or Hiawatha.

■ If the compensation that is paid or agreed to be paid to a debtor's attorney exceeds the reasonable value of the services provided, § 329(b) authorizes the court to cancel the agreement and order return of the return of excessive payments to the debtor or the party that made such payment. Section 329(b) states

If such compensation exceeds the reasonable value of any such services, the court may cancel any such agreement, or order the return of any such payment, to the extent excessive, to—

(1) the estate, if property transferred—

(A) would have been property of the estate; or

(B) was to be paid by or on behalf of the debtor under a plan under chapter 11, 12, or 13 of this title; or

(2) the entity that made such payment.

Because the Defendants have failed to offer the Court any information regarding the services it has rendered for the Debtor, it is impossible for the Court to determine the reasonableness of the compensation it has received. Defendants refusal to offer any evidence regarding the reasonableness of the compensation it has received must create the presumption that all of the compensation is excessive.[32]

■ Additionally, " 'reasonable compensation for services rendered' necessarily implies *loyal and disinterested* service in the interest for whom the claimant purported to act." [33] The most significant non-disclosures are the payments Defendants received from Standard. Debtor's counsel cannot represent the Debtor and receive fees from a major creditor and remain disinterested.

■ Finally, "an attorney who fails to comply with the disclosure requirements of § 329 and Rule [2016(b)] forfeits any right to receive compensation for services rendered on behalf of the debtor.... The Court may sanction failure to disclose 'regardless of actual harm to the estate.' " [34]

## C. Fees Paid to Defendants by Debtor.

Concerning that portion of Trustee's motion for summary judgment that seeks disgorgement of fees paid by the Debtor to Defendants, while each of the Trustee's stated grounds for relief are separate and discreet causes of action, the facts and circumstances that give rise to the Trustee's complaints focus on the same actions and/or failure to act on the part of the Defendants.

### 1. Fees can not be awarded under § 330.

■ The Defendants affirmatively requested, and received, Court authorization to be employed under § 327. The Defendants, not withstanding their employment under § 327, now argue that they are not required to obtain court approval for payment of their fees. As discussed above,

---

32. *Case v. Unified School Dist. No. 233*, 157 F.3d 1243, 1249 (10th Cir.1998) (citations omitted).

33. *Gray v. English*, 30 F.3d 1319, 1322 (10th Cir.1994) (internal citations and quotations omitted) (emphasis added).

34. *Jensen v. U.S. Tr. (In re Smitty's Truck Stop, Inc.)*, 210 B.R. 844, 848–49 (10th Cir. BAP 1997) (*quoting In re Maui 14K, Ltd.*, 133 B.R. 657, 660 (Bankr.D.Haw.1991)).

the Defendants were required to be employed under § 327 and obtain Court approval pursuant to § 330 for payment of their fees. To the extent Defendants argue they were not employed under § 327 no compensation can be authorized under § 330. Defendants have not filed any application for compensation in this case and no fees can be awarded at this time.

## 2. Disallowance of fees under § 328.

 If a debtor's attorney is paid by a creditor of the estate, a presumption must arise that the attorney is not disinterested. The Defendants have not offered any evidence to rebut this presumption. The Defendants received payments from Standard and Hiawatha who were party to contracts with the Debtor and have asserted numerous claims against the Debtor. Under the circumstances of this case and the record before the Court, the Court finds that the Defendants were not disinterested and held an interest adverse to the estate with respect to the matters for which they were employed. The Court finds that terms and conditions of Defendants' employment were improvident in light of developments that were not anticipated at the time of Defendants' employment. Therefore, the Court disallows any fees to Defendants for representing the Debtor prior to the conversion of the bankruptcy case to a case under chapter 7 and orders disgorgement of all fees paid to Defendants by the Debtor.

## 3. Disallowance of fees under § 329.

 Defendants failed to disclose, or affirmatively misrepresented, the compensation paid, or agreed to be paid, after one year before the date of the petition in connection with the case. The Defendants' failure to fully and honestly disclose all compensation it has been paid, particularly compensation from creditors, justifies a re-duction in fees under § 329(b). Because of the Defendants' failure to account to this Court for any of their services, and failure to even address the presumption that they had a conflict of interest in representing the Debtor, the Court can only conclude that the value of the services provided by the Defendants to the Debtor have no value and the compensation paid by the Debtor exceeds the value of the services by the full amount.

Defendants' Disclosure supplies the type of limited information or misinformation that demands a response by the Court. Under the circumstances of this case, the Court finds that the Defendants failed to comply with § 329(a) and Rule 2016(b) and failed to disclose or misrepresented the compensation it had been paid and had agreed to be paid. The Defendants failed to provide loyal and disinterested service to the Debtor and the Defendants' services to the Debtor in possession have no value. In the disclosure of October 31, 2008, Defendants state that "[p]rior to the filing of this statement Defendants have received $0.00."[35] The Court feels compelled to make the Defendants' statement a true statement and will order disgorgement of all fees paid to the Defendants by the Debtor.

## D. Fees Paid to Defendants by Standard and Hiawatha.

 With respect to the Trustee's assertion that the payments that Defendants received from Standard and Hiawatha should be treated as loans from Standard and Hiawatha to the Debtor and therefore as payments from the Debtor to Defendants, Trustee offers nothing to support the allegation that the payments made directly from Standard and Hiawatha to Defendants were, in fact, disguised loans to the Debtor, nor

---

**35.** *See* App. A.

has Trustee joined Standard and Hiawatha in this adversary proceeding. Under § 329(b)(2) any compensation that exceeds the value of the services provided must be returned to the entity that made such payment. Trustee has failed to support his allegations by declaration or otherwise, and, as a result, this portion of the Trustee's motion for summary judgment must be denied.

Further, without joining Standard and Hiawatha, the parties that are statutorily entitled to any fees ordered returned under § 329(b)(2), that portion of the Trustee's adversary proceeding which seeks turnover of payments made by Standard and/or Hiawatha to the trustee is subject to dismissal under Rule 19. Rule 19 does not require the absent party to actually possess an interest; it only requires that the absent party claim an interest relating to the subject of the action.[36] Standard and Hiawatha are indispensable parties with respect to the disposition of any payments made by Standard or Hiawatha to the Defendants.

## V. CONCLUSION

Pursuant to §§ 328 and 329 the Court will disallow any fees payable to the Defendants by the Debtor. Because the Court is disallowing any fees to the Defendants, all payments the Defendants have received from the Debtor must be disgorged. The Court's findings and conclusions in this case are based, in part, on the Defendants' failure to (1) provide this Court with any accounting of time or services rendered on behalf of the Debtor, and (2) provide this Court with any information regarding its agreement with Standard and Hiawatha for payment of fees. Because the Defendants have failed to provide this information to the Court, the Court can only conclude that the compensation received by Defendants from the

Debtor exceeded the value of the services rendered to the Debtor in possession, the Defendants held an interest adverse to the estate and were not disinterested with respect to the matters for which they were retained, and that the Defendants' failure to comply with Rule 2016 justifies disgorgement of fees paid to Defendants by the Debtor.

If Defendants believe that they have not been afforded a fair opportunity to disclose to this Court the nature of the services they have rendered for the Debtor and provide this Court with a detailed description of services rendered to the Debtor which would enable this Court to determine that the Defendants did not represent an interest adverse to the estate and were disinterested with respect to the matters for which they were retained, the Defendants may, within 30 days from the date of this decision, file an application for compensation and any additional disclosure they deem appropriate. In order for the Court to determine that Defendants did not represent an interest adverse to the estate and were disinterested, the application for compensation must detail all services the Defendants have rendered in connection in this case, including services for which they are not seeking compensation, and must disclose all agreements they have with Standard and Hiawatha.

### Appendix A

### DISCLOSURE OF COMPENSATION OF ATTORNEY FOR DEBTOR(S)

1. Pursuant to 11 U.S.C. § 329(a) and Bankruptcy Rule 3016(b), I certify that I am the attorney for the above-named debtor and that compensation paid to me within one year before the filing of the petition in bankruptcy, or

---

**36.** *Citizen Potawatomi Nation v. Norton,* 248 F.3d 993 (10th Cir.2001).

agreed to be paid to me, for services rendered or to be rendered on behalf of the debtor(s) in contemplation of or in connection with the bankruptcy case is as follows:

For legal services, I have agreed to accept . . . . . . $ 0.00

Prior to the filing of this statement I have received . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ 0.00

Balance Due . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ 0.00

2. $ 0.00 of the filing fee has been paid.

3. The source of the compensation paid to me was:

☐ Debtor ■ Other (specify): **Hourly**

4. The source of the compensation paid to me was:

☐ Debtor ■ Other (specify): **Hourly**

## Appendix B

The record before the Court establishes that Defendants received payments as attorney for the Debtor follows:

| Date | Deposit/Payment | Draw | Source |
|------|-----------------|------|--------|
| 1/24/2008 | $12,000 | | Debtor |
| 2/1/3/2008 | $ 3,000 | | Debtor |
| 3/25/2008 | | $12,135 | |
| 5/13/2008 | $ 7,000 | | Debtor |
| 6/11/2008 | | $ 4,075.98 | |
| 7/10/2008 | $ 7,000 | | Standard |
| 7/10/2008 | | $ 1,957.02 | |
| 7/21/2008 | | $ 3,903.41 | |
| 9/3/2008 | | $ 1,139.57 | |
| 9/25/2008 Order for Relief Signed (Entered 9/26/2008) | | | |
| 9/26/2008 | 35,000.00 | | Standard |
| 9/26/2008 | | $17,182 | |
| 9/26/2008 | | $ 7,817.69 | |
| 10/21/2008 | | $ 4,782.78 | |
| 11/13/2008 Case Converted to Chapter 7 | | | |
| 11/20/2008 | | $ 5,517.22 | |
| 3/9/2009 | $33,874.78 | | Standard |
| 6/15/2009 | $10,000 | | Hiawatha |
| 7/6/2009 | $20,000 | | Hiawatha |
| 7/27/2009 | $20,360.72 | | Hiawatha |
| 10/27/2009 | $27,955.49 | | Standard |
| 12/29/2009 | $20,000.00 | | Standard |
| 1/13/2010 | $25,000.00 | | Standard |
| 1/25/2010 | $25,000.00 | | Standard |
| 2/18/2010 | $20,000.00 | | Standard |