**In re SMITTY'S TRUCK STOP, INC., a Wyoming corporation, doing business as Stateline Service, Debtor.**

**Georg JENSEN, Appellant,**

v.

**UNITED STATES TRUSTEE, Appellee.**

**BAP No. WY–96–023.
Bankruptcy No. 93–20358.**

United States Bankruptcy Appellate Panel of the Tenth Circuit.

Aug. 6, 1997.

Georg Jensen, pro se.

Paul Hunter, Assistant U.S. Trustee, Cheyenne, WY, for Appellee.

Before McFEELEY, Chief Judge, PEARSON, and CORNISH, Bankruptcy Judges.

## OPINION

McFEELEY, Chief Judge.

Appellant Georg Jensen appeals the Order on Request for Payment of Attorney's Fees of the United States Bankruptcy Court for the District of Wyoming ("the Order"). In its Order, the Bankruptcy Court required the Appellant, attorney for the debtor, to disgorge all previously paid compensation and denied further compensation from the debtor's bankruptcy estate. This Court has jurisdiction pursuant to 28 U.S.C. § 158(c). We review the Bankruptcy Court's denial of compensation for abuse of discretion. *Interwest Bus. Equip., Inc. v. United States Trustee (In re Interwest Bus. Equip., Inc.)*, 23 F.3d 311, 315 (10th Cir.1994). The issue on appeal is whether the Bankruptcy Court abused its discretion in denying all fees and ordering disgorgement of fees received due to Appellant's lack of investigation and disclosure of the receipt and the source of a retainer paid to him by the debtor in possession. Because we conclude that the Bankruptcy Court acted within its discretion, we affirm.

## BACKGROUND

Appellant filed this bankruptcy case on behalf of the debtor, Smitty's Truck Stop, Inc. ("Smitty's"), under Chapter 11 on May 13, 1993. Appellant filed a Rule 2016(b)[1] disclosure statement with the petition, in which he stated that he had received no funds as compensation except the filing fee. In its statement of affairs, filed eleven days later, Smitty's listed a payment to Appellant of $5,000 as a retainer. Appellant's 2016(b) statement was never amended.

On May 9, 1993, Smitty's filed an application to retain Appellant as attorney for the debtor. Appellant attached an affidavit to the application stating that he had no significant prior connection with Smitty's or its creditors. He stated further that prior contacts, if any, with Smitty's did not create an interest adverse to the estate nor were they disqualifying. The court appointed Appellant to represent Smitty's on May 18, 1993. Shortly thereafter, the court converted the case to one under Chapter 7.

On January 19, 1996, Appellant· filed an Application for Professional Compensation (the "first fee application"). On the required cover sheet, Appellant stated for the first

---

1. Future references are to title 11 of the United States Code and to the Federal Rules of Bank-

ruptcy Procedure unless otherwise noted.

time that he had been paid $5,000 for services rendered and expenses incurred. He stated that the source of the retainer funds was from Paul and Darlene Smith, personally. The Smiths are the sole shareholders of Smitty's. The first fee application requested a total of $4,996.99 in fees and expenses. The U.S. Trustee ("UST") objected, stating, *inter alia,* that Appellant provided inconsistent information about his retainer. Appellee's Appendix at 16. At the hearing held on February 29, 1996, the Appellant did not know whether the Smiths paid him from their own funds or from corporate funds.[2] The court denied the application without prejudice and ordered the Appellant to submit an amended application to provide a complete explanation of the discrepancies surrounding the retainer and the source of the funds. Order on the Request for Payment of Attorney Fees Filed by Debtor's Counsel, No. 93–20358 (filed Mar. 13, 1996), Appellee's Appendix at 20.

On March 11, 1996, Appellant submitted an amended fee application seeking a total of $7,051.54 for the same time frame of representation (the "amended fee application"). The amended fee application contained no information concerning the source of the retainer. On the cover sheet, Appellant stated that the retainer was $5,000, but the source of the funds was undisclosed. The UST filed another objection stating that since the amended fee application contained no information about the retainer, it should be denied in its entirety. Appellant's Appendix at 35. In response to the objection, Appellant filed a Traverse to Objection to Application for Compensation (the "Traverse") in which he finally stated that the retainer was paid from corporate funds with a cashier's check purchased by Smitty's. The Traverse further described the retainer as being "the proceeds from the sale of a piece of equipment owned by the corporation, immediately prior to filing, which was included in the

security of the Farmers State Bank." Appellant's Appendix at 38. At the hearing on the amended fee application, the Appellant stated to the court that the retainer came "from the sale of a piece of equipment, a piece of equipment that was, in fact, corporate property.... [T]hat is something that I did not know at the time the first application was filed and, in fact, had surmised that the debtors [sic], stockholders had had to advance those funds themselves." Transcript of Hearing held on April 18, 1996, Appellee's Appendix at 58.

The court in its Order made the following findings of fact and conclusions of law: First, Appellant did not disclose the receipt of a $5,000 retainer in his Rule 2016 statement, which was never amended. This failure alone is sufficient to deny all fees. Second, Appellant failed to inform the court of the source of the retainer funds. He had a duty to inquire from the debtor as to the source of the funds paid to him from a cashier's check purchased by the corporation. Third, because Appellant did not disclose the source of the retainer until after the UST's objection to his amended fee application, Appellant failed in his duty to discover and disclose this information to the court. Fourth, whether or not he was aware of it, Appellant received cash collateral as a retainer. This created an unacceptable conflict of interest between Appellant and the lien-holding creditor and between the debtor and this creditor. The Court, therefore, concluded that "the failure to investigate and disclose the amount and source of the retainer funds from the inception of the case, and the failure to investigate and disclose the conflicting claims to the funds, requires the denial of compensation." Order at p. 7, Appellee's Appendix at 46.

### DISCUSSION

*I. Appellant's failure to comply with the disclosure requirements of 11 U.S.C. § 329 and Fed. R. Bankr.P.2016(b).*

Section 329(a) provides:

---

**2.** At the hearing on the first application the Appellant told the Court:

As of late yesterday, we tried to find out where those funds came from.... So it came from the sale of a backhoe at the last minute. It doesn't appear on the schedules, it does appear there was a backhoe, however, that was se-

cured to the Burns Bank. I can't say whether it was a corporate asset or one of those that was mixed up in Smith's Diesel or co-owned or how it was held.
Transcript of Hearing held on February 29, 1996, Appellee's Appendix at 56.

Any attorney representing a debtor in a case under this title, or in connection with such a case, whether or not such attorney applies for compensation under this title, shall file with the court a statement of the compensation paid or agreed to be paid, if such payment or agreement was made after one year before the date of the filing of the petition, for services rendered or to be rendered in contemplation of or in connection with the case by such attorney, and the source of such compensation.

Rule 2016(b) provides:

DISCLOSURE OF COMPENSATION PAID OR PROMISED TO ATTORNEY FOR DEBTOR. Every attorney for a debtor, whether or not the attorney applies for compensation, shall file and transmit to the United States trustee within 15 days after the order for relief, or at another time as the court may direct, the statement required by § 329 of the Code including whether the attorney has shared or agreed to share the compensation with any other entity.... A supplemental statement shall be filed and transmitted to the United States trustee within 15 days after any payment or agreement not previously disclosed.

These provisions require an attorney to disclose all fee payments and agreements made after one year before the bankruptcy filing, for services in contemplation of, or in connection with, the bankruptcy filing. *In re Florence Tanners, Inc.*, 209 B.R. 439, 442 (Bankr. E.D.Mich.1997). They enable the Bankruptcy Court to carry out its traditional role of scrutinizing carefully the compensation paid to the debtor's attorney. Courts have long recognized that the debtor is in a vulnerable position and is highly dependent on its attorney and therefore will be reluctant to object to the fees of the attorney. The purpose of this process is to prevent overreaching by an attorney and provide protection for creditors. 3 *Collier on Bankruptcy* ¶ 329.01 (Lawrence P. King ed., 15th ed. rev.1997); *see also In re Busy Beaver Bldg. Ctrs., Inc.*, 19 F.3d 833, 844 (3rd Cir.1994) ("Disagreeable as the chore may be, the bankruptcy court must protect the estate, lest overreaching attorneys or other professionals drain it of wealth

which by right should inure to the benefit of unsecured creditors."); *Burd v. Walters (In re Walters)*, 868 F.2d 665, 668 (4th Cir.1989) (noting that legislative history states that the purpose of § 329 is to protect creditors and debtor from overreaching by attorneys); *Land v. First Nat'l Bank (In re Land)*, 116 B.R. 798, 804 (D.Colo.1990) (citing legislative history and noting that serious potential for overreaching by debtor's attorney should be subject to careful scrutiny), *aff'd & remanded*, 943 F.2d 1265 (10th Cir.1991).

The disclosure requirements of § 329 are " 'mandatory[,] not permissive.' " *Turner v. Davis, Gillenwater & Lynch (In re Investment Bankers, Inc.)*, 4 F.3d 1556, 1565 (10th Cir.1993) (citing *In re Bennett*, 133 B.R. 374, 378 (Bankr.N.D.Tex.1991)). " '[D]ebtor's counsel [must] lay bare all its dealings ... regarding compensation.... Counsel's fee revelations must be direct and comprehensive. Coy, or incomplete disclosures ... are not sufficient.' " *Neben & Starrett, Inc. v. Chartwell Fin. Corp. (In re Park–Helena Corp.)*, 63 F.3d 877, 881 (9th Cir.1995) (alterations in original) (quoting *In re Saturley*, 131 B.R. 509, 516–17 (Bankr. D.Me.1991)); *see also In re Plaza Hotel Corp.*, 111 B.R. 882, 883 (Bankr.E.D.Cal. 1990) (attorney's duty is to completely disclose all facts regarding his employment), *aff'd without op.*, 123 B.R. 466 (9th Cir. BAP 1990). "Negligent or inadvertent omissions 'do not vitiate the failure to disclose.' " *Park–Helena*, 63 F.3d at 881 (quoting, *In re Maui 14K, Ltd.*, 133 B.R. 657, 660 (Bankr. D.Haw.1991)).

Accordingly, an attorney who fails to comply with the disclosure requirements of § 329 and Rule 2016(b) forfeits any right to receive compensation for services rendered on behalf of the debtor and may be ordered to return fees already received. *Investment Bankers*, 4 F.3d at 1565 (citing *Bennett*, 133 B.R. at 379); *see also Quiat v. Berger (In re Vann)*, 136 B.R. 863, 873 (D.Colo.1992) (under abundant case law, noncompliance with Rule 2016(b) will support the total denial of fees); *Maui*, 133 B.R. at 660 (failure of counsel to obey mandate of § 329 and Rule 2016 concerning disclosure is basis for denying compensation and ordering return of fees

already paid); *In re Crimson Invs., N.V.,* 109 B.R. 397, 401 (Bankr.D.Ariz.1989) (same); *In re Chapel Gate Apartments, Ltd.,* 64 B.R. 569, 575 (Bankr.N.D.Tex.1986) (same); *In re Kero–Sun, Inc.,* 58 B.R. 770, 780–81 (Bankr. D.Conn.1986) (same). The Court may sanction failure to disclose "regardless of actual harm to the estate." *Maui,* 133 B.R. at 660.

The Bankruptcy Court was correct in concluding that Appellant violated § 329 and Rule 2016(b). First, Appellant did not disclose the receipt of the $5,000 retainer in his 2016(b) disclosure statement. And even though Smitty's statement of affairs listed the retainer payment, Appellant filed no supplement to his disclosure statement as required by the Rule. *See Arens v. Boughton (In re Prudhomme),* 43 F.3d 1000, 1003 (5th Cir.1995) (disgorgement ordered where firm failed to disclose retainer in 2016 disclosure statement even though retainer was disclosed in statement of financial affairs).

■ Appellant attempts to excuse himself by arguing that the Chapter 11 was filed on an emergency basis, implying that this omission was simply an oversight. However, this does not excuse his failure to file a supplemental statement to correct the error. Appellant further asserts that his failure to disclose the retainer to the court was not done in bad faith or in an effort to conceal. The court did not specifically find bad faith or an effort to conceal, but those findings are not necessary to hold Appellant in violation of § 329 and Rule 2016(b). Even a negligent or inadvertent failure to disclose the retainer is sufficient to deny fees. *Park–Helena,* 63 F.3d at 881; *Vann,* 136 B.R. at 873; *Maui,* 133 B.R. at 660.

■ Appellant also argues that the retainer was disclosed in Smitty's statement of affairs. If we accepted this argument, we would nullify the § 329 and Rule 2016(b) disclosure requirements, which are designed to enable courts to oversee the fee arrangement between debtor and its counsel. More importantly, it is not the court's job to search through the record to find all relevant facts relating to an attorney's employment. *Maui,* 133 B.R. at 660. It is counsel's duty to

provide the court with the information necessary to determine whether to appoint counsel. *See Crimson Invs.,* 109 B.R. at 401 (failure to disclose critical information to the court, to enable court to make informed decision regarding appointment of counsel, frustrates disclosure provisions of § 329 and Rule 2016).

We conclude that the Appellant's failure to disclose the receipt of the retainer in his Rule 2016 statement constituted a clear violation of § 329 and Rule 2016(b). Even if this failure was negligent or inadvertent, it is sufficient, in itself, to deny all fees. *Park–Helena,* 63 F.3d at 881.

> *II. Appellant's failure to comply with the requirements of § 327(a) and Rule 2014(a).*

■ Section 327(a) provides:

Except as otherwise provided in this section, the trustee,[3] with the court's approval, may employ one or more attorneys, ..., or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title.

Rule 2014 dictates the manner in which the debtor in possession actually requests the employment of an attorney or other professional under § 327. Rule 2014(a) states:

(a) APPLICATION FOR AN ORDER OF EMPLOYMENT. An order approving the employment of attorneys, ... or other professionals pursuant to § 327 ... shall be made only on application of the trustee or committee.... The application shall state the specific facts showing the necessity for the employment, the name of the person to be employed, the reasons for the selection, the professional services to be rendered, any proposed arrangement for compensation, and, to the best of the applicant's knowledge, all of the person's connections with the debtor, creditors, [or] any other party in interest.... The application shall be accompanied by a verified statement of the person to be employed setting forth the person's connections with the debtor,

---

**3.** This section is applied to debtors in possession under § 1107(a).

creditors, [or] any other party in interest. . . .

Section 327(a) authorizes the employment of professional persons only to the extent that such persons do not hold or represent an interest adverse to the estate and are "disinterested," as that term is defined in § 101(14). A disinterested person is defined by the Code as one who

> does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor. . . .

11 U.S.C. § 101(14)(E). The Rule 2014(a) disclosure is necessary to enable the court to evaluate fully whether the professional is actually "disinterested."

 Because of the unique nature of the bankruptcy estate, the debtor in possession is considered a fiduciary of that estate. *Interwest*, 23 F.3d at 317. For the same reason, courts have imposed a fiduciary duty upon counsel for the debtor in possession. *In re Bonneville Pac. Corp.*, 196 B.R. 868, 885 (Bankr.D.Utah.1996). This duty requires the attorney to exercise independent professional judgment on behalf of the estate. This includes the duty to disclose any actual or potential conflicts of interest with the estate. *In re Amdura Corp.*, 139 B.R. 963, 978 (Bankr.D.Colo.1992). " 'Given that the duty is upon the attorney to "divulge conflicts, and not upon the client to ferret them out", the attorney should . . . evaluate for himself, as well as for his client, any potential for impropriety that might arise. . . .' " *Id.* (quoting *In re King Resources Co.*, 20 B.R. 191, 201 (D.Colo.1982)). In fulfilling this duty, the attorney has a duty to fully disclose any connections with the debtor or creditors that might create a possible conflict, and all fee arrangements with the debtor in possession. *Interwest*, 23 F.3d at 316 n. 9; *Bonneville Pac. Corp.*, 196 B.R. at 886. Failure to disclose connections that have the potential for creating a conflict warrants a denial of all compensation to debtor's counsel. *Interwest*, 23 F.3d at 318.

The Appellant failed to inform the Court of the source of the retainer funds in his 2016(b) statement, his affidavit and application for employment, and his first and amended fee applications. It was not until the hearing on the amended fee application that the Appellant orally recited to the Court the source of the funds. From this information, the Court correctly concluded that, whether he realized it or not, Appellant had received cash collateral belonging to Farmers State Bank as a retainer. Therefore, the Court concluded, and we agree, that this failure to investigate and disclose the conflicting claims to the funds, required disgorgement of the retainer and denial of fees.

Appellant argues that the Court's factual finding that the retainer was cash collateral was erroneous because no evidence of such was proffered at the April 18, 1996 hearing. This argument ignores the fact that the Appellant's Traverse explained that the retainer funds came from the sale of a piece of equipment owned by the corporation, immediately prior to filing, which was included in the security of the Farmers State Bank. Moreover, the Appellant himself stated to the Court at the April hearing that the funds came from "the sale of a piece of equipment that was in fact, corporate property." Appellant's App. at 58. The Court had ample evidence before it to conclude that the funds were cash collateral.

Appellant further asserts that the receipt of cash collateral as a retainer gave rise only to a potential conflict of interest, not an actual conflict. He cites *In re Diamond Mortgage Corp.*, 135 B.R. 78 (Bankr.N.D.Ill. 1990), which held that only actual conflicts of interest warrant disqualification or denial of fees. The *Diamond Mortgage* court followed a more flexible approach when dealing with potential conflicts of interest, which involves a case-by-case determination using four factors in evaluating whether to sanction an attorney whose conflict is only potential. *Id.* at 91. However, the Tenth Circuit has taken a stricter approach to the conflicts of interest issue. *Interwest*, 23 F.3d at 317 (attorney's fiduciary duty creates higher standard than just lack of actual conflict of interest). Moreover, this argument fails to address the basis of the Court's holding, which was Appellant's complete lack of disclosure of the

source of the retainer in the relevant pleadings. The Court in this case was not given a chance to evaluate possible conflicts of interest until the hearing on the amended fee application. That was too late.

The Appellant completely failed to comply with the disclosure requirements of §§ 327 and 329 and Rules 2014(a) and 2016(b), first by providing no information on the retainer in his first statement, and then by providing incorrect and inconsistent information in his applications to employ and fee applications. As a result, the Bankruptcy Court ordered disgorgement of the retainer and denial of all fees. In this it did not abuse its discretion. The Bankruptcy Court is hereby AFFIRMED.