**In re SOUTH STATION, LLC, Debtor.**

**No. 08–27583.**

United States Bankruptcy Court, D. Utah.

Dec. 13, 2011.

─────────

Michael N. Zundel, Jennifer Korb, Prince, Yeates, & Geldzahler, Salt Lake City, UT, Kenneth A. Rushton, Lehi, UT, for the Chapter 7 Trustee.

David R. Williams, Russell S. Walker, Woodbury & Kesler, P.C., Salt Lake City, UT, for Debtor.

Laurie A. Cayton, U.S. Trustee's Office, Salt Lake City, UT, for the United States Trustee.

Scott Cummings, Mary Margaret Hunt, Dorsey & Whitney LLP, Salt Lake City, UT, for the Chapter 7 Trustee in JL Building.

## MEMORANDUM DECISION DENYING FIRST AND FINAL APPLICATION FOR ALLOWANCE OF ATTORNEYS' FEES AND COSTS FOR WOODBURY & KESLER, P.C., ATTORNEYS FOR SOUTH STATION, LLC

WILLIAM T. THURMAN, Bankruptcy Chief Judge.

The matter before the Court is the First and Final Application for Allowance of Attorneys' Fees and Costs for Woodbury & Kesler, P.C., Attorneys for South Station, LLC pursuant to 11 U.S.C. §§ 329 and 330 and Fed. R. Bankr.P. 2016 ("Fee Application"). The Chapter 7 Trustee, Kenneth Rushton ("Chapter 7 Trustee") filed an Objection to the Fee Application ("Objection") on October 5, 2011 on the grounds that Woodbury and Kesler, P.C. ("Applicant") failed to comply with the disclosure requirements of Fed. R. Bankr.P. 2016. The United States Trustee ("UST") joined in the Chapter 7 Trustee's objection at the hearing.

The Court conducted an evidentiary hearing on this matter on October 17, 2011 and November 9, 2011 and the parties presented evidence and oral argument. At the hearing, David Williams appeared for the Applicant, Michael Zundel and Jennifer Korb appeared for the Chapter 7 Trustee, Scott Cummings appeared for the Chapter 7 Trustee of the JL Building estate, and Laurie Cayton and Vince Cameron appeared for the UST.

At the conclusion of the hearing, the Court took the matter under advisement.[1] Based upon the Application, the Objection, the parties' oral arguments, evidence presented, statutory authority, and review of relevant case law the Court issues the following Memorandum Decision, which will constitute its findings of fact and conclusions of law.

## I. JURISDICTION AND VENUE

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157(a). Venue is appropriate under 28 U.S.C. § 1408(1). The Court finds that notice of this hearing is appropriate in all respects.

## II. BACKGROUND

South Station filed a voluntary chapter

---

1. It is important to note that the evidence and argument presented in this contested matter was also received in the related bankruptcy case of JL Building where another of the Applicant's fee applications is currently pending. Due to the overlap of certain evidence, reference to the JL Building case is made here for context only. A separate ruling will be made in the JL Building case for the professional fees and costs requested by the Applicant.

11[2] bankruptcy petition on October 30, 2008. Preceding South Station's filing, five related business entities sought the bankruptcy counsel and services of Russell S. Walker and the Applicant, Russell S. Walker's law firm. The related entities included: South Station; JL Building, LLC ("JL Building"); JL Building 2, LLC ("JL Building 2"); HEP Development, LLC; and Dana Point, LLC. Steve and Dee Bates (the "Bates"), brothers and business partners, were the principals of all of the related entities.

The five related entities sought bankruptcy counsel simultaneously because South Station had an outstanding debt with First Interstate Financial that held a collateral interest in all of South Station's property. The affiliated entities (JL Building, JL Building 2, HEP Development, and Dana Point) pledged their assets to secure the First Interstate Financial loan, although the affiliated entities were not obligors on the loan. The Applicant prepared and filed bankruptcy petitions on behalf of all of the related entities. It was not until April 27, 2009 that the Court authorized the employment of Russell Walker and the Applicant as counsel for the Debtor, South Station.[3]

## III. FACTS

The South Station case was converted to a chapter 7 bankruptcy on January 19, 2010.[4] On December 10, 2008 the Applicant filed an Ex Parte Application to Employ Russell S. Walker as Attorney for South Station ("Application to Employ").[5] The Application to Employ stated:

4. Applicant believes, based upon the attached Affidavit, that the employment of Russell S. Walker and the law firm of Woodbury & Kesler, P.C. is appropriate, economically sound, in the best interest of the estate, and does not hold or represent an interest adverse to the estate.

5. Woodbury & Kesler, P.C. and any lawyer of Woodbury & Kesler, P.C. should be compensated at the usual hourly rate set for each attorney of the law firm for legal services provided to the Applicant and should be reimbursed allowable costs advanced to the Applicant or in connection with providing legal services to the Applicant in this case, subject to Court approval.

6. Woodbury & Kesler, P.C. received a retainer of $13,000 for attorney fees and costs to represent the debtor.[6]

In the Declaration of Russell S. Walker[7] that accompanied the Application to Employ, Mr. Walker made further statements relating to his and the Applicant's disinterestedness with respect to the representation of South Station:

3. The law firm of Woodbury & Kesler, P.C. has conducted a conflict of interest analysis and has determined that neither the law firm of Woodbury & Kesler, P.C., nor any of its shareholders, associ-

---

2. All subsequent chapter and section references herein are contained in title 11 of the United States Code, unless otherwise specified.

3. Order Granting Ex Parte Application to Employ Russell S. Walker as Attorney for South Station, LLC, Docket # 68. For reasons set forth herein, the Court does not address the delay in appointment and what impact that would have on the total Fee Application if allowed.

4. Order Converting Case to Chapter 7, Docket # 190.

5. Ex Parte Application to Employ Russell S. Walker as Attorney for South Station, LLC, Docket # 20.

6. *Id.* ¶¶ 4–6.

7. Affidavit/Declaration of Russell S. Walker, Docket # 21.

ates, or employees holds or represents any interest adverse to the bankruptcy estate, and that said persons and said firm are disinterested within the meaning of 11 U.S.C. § 101(14).

4. South Station, LLC has requested Woodbury & Kesler, P.C. represent the corporation in the above-entitled bankruptcy case. Neither I nor Woodbury & Kesler, P.C. has had any connection with the creditors or any party-in-interest, or their attorneys that would create a conflict or prevent Woodbury & Kesler, P.C. from representing South Station, LLC.[8]

Between December 1, 2008 and August 13, 2010, the Applicant filed four "Disclosure[s] of Compensation of Attorney for Debtor" under Fed. R. Bankr.P. 2016 disclosing amounts paid to the Applicant from Steve and Dee Bates (the "Bates"), owners of Majestic Holdings, the owner of the Debtor. The four disclosures, disclosing a total of $33,000 in postpetition payments, are summarized in the chart below.

| DISCLOSURE OF COMPENSATION PAID | DATE OF PAYMENTS | AMOUNT DISCLOSED |
| --- | --- | --- |
| Docket 16 (December 1, 2008) | 1 year prior to petition | $ 0 |
| Docket 211 (April 16, 2010) | March 19, 2010 | $13,000 |
| | April 1, 2010 | $ 5,000 |
| Docket 218 (June 7, 2010) | May 5, 2010 | $ 5,000 |
| | June 7, 2010 | $ 5,000 |
| Docket 233 (August 13, 2010) | July 20, 2010 | $ 5,000 |
| | | **TOTAL $33,000** |

As noted above, the Application to Employ stated that the Applicant had accepted $13,000 as a prepetition retainer "to represent the debtor."[9] In regards to why the December 1, 2008 disclosure statement signed by Russell S. Walker stated that $0 had been received by the Applicant prepetition, Mr. Walker testified that the Applicant had recently acquired new software for the preparation of petitions. He explained that the software prepared the disclosure statement but the default for retainers paid was shown as $0 and the Applicant neglected to change that number when in fact $20,000 had been paid prepetition. A payment of $4,000 made by the Bates on January 27, 2010 was not disclosed on any of the Applicant's filings, including the disclosure of compensation filed December 1, 2008. The Applicant testified that this $4,000 post-conversion payment is being held in trust and the Applicant has not applied or credited the $4,000 to any outstanding legal fees.

There is no evidence that the Applicant held or is holding any of the other post-conversion payments in its trust account. None of the Applicant's filings, including the Fee Application, provide an accounting of how the $33,000 post-conversion payments were applied to the outstanding legal fees and costs incurred in the case.

South Station's Statement of Financial Affairs[10] filed December 16, 2008, states in response to question 9 that the Applicant received $20,000 in October 2008 for "payment related to debt counseling or bank-

8. *Id.* ¶¶ 3–4.

9. Ex Parte Application to Employ Russell S. Walker as Attorney for South Station, LLC, ¶ 6, Docket # 20.

10. Statement of Financial Affairs and Schedules Amended, Docket # 32.

ruptcy." The Applicant's response to the Statement of Financial Affairs question 9 does not state the source of the $20,000,[11] thus implying that the source was the Debtor. The testimony presented at the hearing showed that all of this $20,000 came directly from the Bates and not from the Debtor, South Station. The Bates signed a promissory note payable to a third party in order to receive the $20,000 that was paid to the Applicant. The parties presented no evidence indicating that these funds were a loan to the Debtor or any form of capital contribution to the Debtor. According to "W & K Exhibit 1" presented at the hearing, portions of the $20,000 retainer were applied in the following manner:

| DESCRIPTION | AMOUNT APPLIED TO PREPETITION FEES AND COSTS |
| --- | --- |
| Prepetition Legal Services | $5,636 |
| Five Chapter 11 Filing Fees | $5,195 |
| Copy Costs | $1.90 |
| Appeal Filing Fee | $255 |
| | **TOTAL $11,087.90** |

W & K Exhibit 1 outlines the amount held in Applicant's trust account. The exhibit shows $13,912 (which the Applicant derived from taking the $20,000 prepetition retainer, subtracting the $11,087.90 applied to prepetition legal fees and costs, and adding the $4,000 post-conversion payment of January 27, 2010).[12]

JL Building filed a chapter 11 bankruptcy petition on November 3, 2008 and on April 29, 2011 the case was converted to

one under chapter 7. On January 19, 2010, South Station's case was converted to a chapter 7 case and Kenneth Rushton was appointed the chapter 7 trustee. After the South Station case was converted, the Applicant applied to represent JL Building in the JL Building case and the Court entered an order granting the Applicant's employment on May 17, 2010.[13]

On September 14, 2011 the Bates filed proof of claim number 12 in the JL Building case for $101,884.16, $14,620 of which was identified as "Accounting for the period of December 2008 to September 2011" for "Russ Walker."[14] The evidence presented showed that although the Bates made payments to the Applicant, the Applicant applied none of the payments toward the JL Building case and all payments were applied to the South Station case. Steve Bates testified that he was willing to withdraw the Bates' proof of claim to eliminate any request for the attorneys fees paid, however, he stated that he would have to go back and make changes to the company's tax returns to do so. Dee Bates' testimony was equivocal when asked if he were willing to withdraw the proof of claim in the JL Building case to the extent it is for attorney's fees incurred. As of the date of this Memorandum Decision, no withdrawal of the proof of claim or any portion of it has been filed in the JL Building case.

In the South Station case a vast majority of the unsecured proof of claims were filed by entities bearing Steve Bates's signature as manager. Furthermore, Steve

---

11. *Id.* question 9.

12. The Court notes that the Applicant's calculation on this exhibit is incorrect, as $20,000 minus $11,087.90 plus $4,000 is actually $12,912.10 and not $13,912.10 as the Applicant contended at the hearing in both W–K Exhibit 1 and in oral argument.

13. Order Granting Motion to Employ Attorney Russell S. Walker as Attorney for Debtor, *In re JL Building, LLC,* Case no. 08–27671, Docket # 104.

14. Proof of Claim filed by Steven and Dee Bates, *In re JL Building, LLC,* Case no. 08–27671, Proof of Claim 12–1.

Bates individually filed another proof of claim in the South Station case on July 21, 2010 for a $2,551 loan he had made to South Station in 2004. The chart below lists the proof of claims signed by Steve Bates in the South Station case:

| PROOF OF CLAIM | CLAIMANT | AMOUNT | SIGNATURE ON BEHALF OF CLAIMANT |
|---|---|---|---|
| 8 | JL Building # 2, LLC | $ 23,166.28 | Steve Bates, Manager |
| 9 | WV Building, LLC | $ 386,856.02 | Steve Bates, Manager |
| 10 | JL Building # 2, LLC | $ 446,662.47 | Steve Bates, Manager |
| 11 | HEP Development, LLC | $1,493,045.74 | Steve Bates, Manager |
| 12 | RT Building, LLC | $ 180,749.91 | Steve Bates, Manager |
| 13 | Steve Bates | $ 2,551.72 | Steve Bates |
| 14 | Armtech Construction, LLC | $ 123,084.75 | Steve Bates, Manager |
| 15 | Home Equity Plan, Inc. | $ 41,267.45 | Steve Bates, Manager |

Accordingly, Steve Bates was involved with these entities which he claims to be creditors and he was an individual putative creditor of South Station as of the date of petition.

## IV. THE FEE APPLICATION AND POSITION OF THE PARTIES

In the Fee Application, the Applicant seeks reimbursement for total compensation of $126,770.64 for services rendered and expenses incurred from November 2008 through January 2010.[15] The Applicant is seeking an award of $121,382.50 as compensation for professional services rendered and $5,388.14 for reimbursement of costs and expenses. In the Fee Application, the Applicant states that it is holding "approximately $14,000 in a trust account which it received as a retainer for filing this case."[16]

On October 5, 2011, the Chapter 7 Trustee filed his Objection to the Fee Application alleging that the Applicant failed to comply with the disclosure requirements of Fed. R. Bankr.P. 2016 because Russell S. Walker demanded and accepted payment, in cash, throughout the chapter 11 portion of the case from the Bates. The Chapter 7 Trustee requests that the Fee Application be denied in its entirety and the $57,000 in payments made to the Applicant by the Bates be disgorged.

At the hearing on November 9, 2011 the UST joined in the Objection, stating that the Applicant has provided an incomplete disclosure and accounting of the monies paid to the Applicant by the Bates. The UST succinctly stated, "we don't know where the money went." Mr. Walker testified that all funds except for those remaining in the trust account had been applied to the South Station account. He also stated that there is time for which he has been paid that does not show on the summary of services provided. The UST pointed out the evidence showing a total of $57,000 paid to the Applicant by the Bates ($20,000 as a prepetition retainer and $37,000 post-conversion) but no accounting of whether and to what the money was applied to, other than the $13,912.10 held in the Applicant's trust account.

Mary Margaret Hunt, the Chapter 7 Trustee in the JL Building case, represented by Scott Cummings, appeared at the hearing on November 9, 2011 and

---

**15.** First and Final Application for Compensation for Russell S. Walker, Docket # 260.

**16.** *Id.* at p. 11, ¶ 52.

voiced concerns regarding which estate (either JL Building or South Station) the Bates' payments were applied to. The JL Building Trustee requested that the $57,000 paid to the Applicant by the Bates, if disgorged, be held in escrow pending a determination of which estate the funds should be applied.

## V. DISCUSSION

The Fee Application and Objection present two main issues: (1) whether there was a failure to disclose under Fed. R. Bankr.P. 2016 and § 329(a) and (2) whether the Applicant meets the requirements of disinterestedness under § 327(a).

### A. *Failure to Disclose under Fed. R. Bankr.P. 2016 and § 329(a)*

#### 1. Inconsistency and Lack of Disclosures

 The first issue is whether the Applicant failed to disclose compensation received under Fed. R. Bankr.P. 2016 and § 329(a) when: (1) Applicant stated that it received $0 prepetition in the December 1, 2008 disclosure statement, even though Applicant received a $20,000 prepetition retainer; and (2) Applicant failed to disclose a $4,000 payment received from the Bates on January 27, 2010.

Section 329 sets forth the obligations incumbent upon a debtor's attorney to disclose compensation paid within one year prepetition. § 329(a) states:

Any attorney representing a debtor in a case under this title, or in connection with such a case, whether or not such attorney applies for compensation under this title, shall file with the court a statement of the compensation paid or agreed to be paid, if such payment or agreement was made after one year before the date of the filing of the petition, for services rendered or to be rendered in contemplation of or in connection with the case by such attorney, and the source of such compensation.

Fed. R. Bankr.P. 2016(b) provides the requirements for the statement of compensation paid referenced in § 329(a), stating that:

Every attorney for a debtor, whether or not the attorney applies for compensation, shall file and transmit to the United States trustee within 14 days after the order for relief, or at another time as the court may direct, the statement required by § 329 of the Code including whether the attorney has shared or agreed to share the compensation with any other entity. The statement shall include the particulars of any such sharing or agreement to share by the attorney, but the details of any agreement for the sharing of the compensation with a member or regular associate of the attorney's law firm shall not be required. A supplemental statement shall be filed and transmitted to the United States trustee within 14 days after any payment or agreement not previously disclosed.

The Court finds the circumstances at issue here similar to the case considered in the Bankruptcy Appellate Panel's ("BAP") decision of *Jensen v. United States Trustee (In re Smitty's Truck Stop, Inc.)*.[17] In *Smitty's*, the 10th Circuit Bankruptcy Appellate Panel (the "BAP") found that the failure of a chapter 11 debtor's attorney to disclose a prepetition retainer alone was an adequate basis to deny all compensation.[18] The BAP found that the failure to disclose the receipt of the applicant's retainer in his 2016 disclosure statement was

---

**17.** 210 B.R. 844 (10th Cir.BAP1997).

**18.** *Id.* at 849.

a "clear violation" of § 329 and Fed. R. Bankr.P. 2016(b).[19] The BAP stated that "[e]ven if this failure was negligent or inadvertent, it is sufficient, in itself, to deny all fees." [20]

Although *In re Smitty's Truck Stop, Inc.* involved a debtor attorney's failure to disclose the receipt of a retainer paid from a creditor's cash collateral, the holding can be broadly applied to the current situation where the Applicant failed on several occasions to disclose the amount and source of funds received.

■ In this case, although the initial 2016 statement filed on December 1, 2008 shows that $0 had been paid to counsel, South Station's Statement of Financial Affairs stated that in October 2008 $20,000 was paid to the Applicant. The Applicant admits that the December 1, 2008 statement is inaccurate and asserts that the nondisclosure was the result of an error in recently acquired computer software. There may have been a computer glitch in the populating of information in the form for the disclosure statement, however, the disclosure statement bears the signature of Russell S. Walker. Noting the mandates of § 329, Fed. R. Bankr.P. 2016, and the plethora of case law on fee applications, counsel could and should have carefully examined the disclosure statement, discovered the mistaken figure of $0, and immediately corrected the error with an amendment or notice of errata. The Court finds the computer glitch argument unavailing, as attorneys are obligated to review all filings with the Court for accuracy and here, counsel apparently failed to adequately inspect the disclosure statement and signed it as correct.

It could be argued that South Station's Statement of Financial Affairs qualified as a "disclosure" when in question 9 the Applicant stated that it had received $20,000 in October 2008. However, the Statement of Financial Affairs did not disclose the correct source of the money received. The source of the funds was an important factor to disclose given that the funds did not come from the Debtor, but rather from the Debtor's principals.

There are other inconsistencies with regard to compensation of the prepetition retainer amount and the amount of the payments being held in the Applicant's trust account which raise questions as to the completeness of disclosure of all compensation paid. First, the Application to Employ stated that $13,000 was paid as a prepetition retainer to represent the Debtor. Second, the Statement of Financial Affairs stated that $20,000 was paid prepetition. Third, the Fee Application itself stated that $14,000 is being held in a trust account as a retainer for filing the South Station case. Lastly, there was an outright failure to disclose $4,000 paid by the Bates post-conversion in January 2010.[21] Accordingly, there was an incomplete disclosure of all funds received and the source of those funds.

## 2. Lack of Accounting Regarding the Application of Payments Received

The Chapter 7 Trustee and the UST have also objected on the basis that there has been an incomplete disclosure of the accounting of the payments made by the Bates to the Applicant. In summary, the

---

19. *Id.*

20. *Id.*

21. While the Applicant disclosed three other post-conversion payments, the $4,000 payment was undisclosed. Fed. R. Bankr.P. 2016(b) does not discriminate among the bankruptcy chapters and the duty to disclose compensation received is a duty that extends to both chapters 7 and 11.

UST's main concern is the fact that $57,000 was paid to the Applicant by the Bates, but that only $13,912.10 is asserted as being held in the Applicant's trust account.[22] The UST asks the valid question, "what happened to the other approximately $43,000?"[23] The UST points out that there is no accounting of whether the money was applied to outstanding fees, thus posing the question as to why the $43,000 was not presented to the Court for determination of whether it was a reasonable fee for services rendered. It appeared to the UST that based on the evidence presented, the outstanding legal fees were reduced by the application of the $43,000, but there was no indication of what the overall outstanding fees were or when and how the Applicant applied those funds. Finally, the UST agrees with the Chapter 7 Trustee that accepting and applying fees without court permission was inappropriate.

At the hearing, the Applicant stated that it plans to credit amounts it has already been paid to the amount requested in the Fee Application. According to testimony, it appears that the Applicant will take the $121,382.50, credit the $33,000 paid post-conversion, credit the approximately $5,600 paid prepetition, and credit the payments remaining in the trust account. Thus, the balance owing would be the amount owing after those payments are applied or credited. However, Mr. Walker did state that some of the funds paid post-conversion have already been applied to the South Station account, but no credits are shown on the accounting before the Court.

The Court is persuaded by the UST's arguments. The Court finds and concludes that based on the evidence, there was inadequate disclosure of the accounting applied for at least $43,000 that was received by the Applicant. This lack of accounting falls within the failure to disclose principles of *In re Smitty's Truck Stop, Inc.* The Fee Application does not discuss whether the payments were already applied to the outstanding legal fee bill or whether the Fee Application is seeking a reimbursement of fees that have already been paid to the Applicant. Accordingly, the Court cannot make a finding of the reasonableness of the fees requested without an accurate and complete accounting. Based on the above findings, the Court concludes that there is enough evidence to disallow the request for fees and costs.

**B. *Disinterestedness Requirements of § 327(a)***

■ Another issue that should be addressed is whether the Applicant is disinterested under § 327(a) and whether this constitutes an independent basis for denial of fees. The evidence presented at the hearing indicated that the $20,000 prepetition retainer and $37,000 in post-conversion payments came from the Bates who were the principals of the Debtor and possibly creditors. This issue was only briefly discussed at the hearing, however, it deserves comment and a ruling as it caught the Court's attention.

Section 327(a) provides the requirements for the employment of professional persons and states:

---

**22.** *See* note 12 (noting that there is a discrepancy as to whether $13,912.10 or $12,912.10 is being held in trust according to the Applicant's evidence).

**23.** The Chapter 7 Trustee argues that it is really $47,000 that is unaccounted for, or a difference of $4,000. The Court does not make a finding of whether it was $43,000 or $47,000, but only that in principal, there was an incomplete disclosure of the application of all funds received by the Applicant in this case.

Except as otherwise provided in this section, the trustee, with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title.

Section 101(14)(C) provides the definition of "disinterested person," stating that a disinterested person "does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor, or for any other reason."

Allegiance to the debtor's estate is paramount in a chapter 11 case. A professional employed under § 327(a) must be disinterested and have no interest that is adverse to the estate at the outset and remain so disinterested throughout the life of the chapter 11 case. Receiving direct payment from the equity owners, a creditor, or even the principals of a creditor at the outset of the case or after conversion neutralizes the disinterestedness requirements mandated by the Code.[24]

Moreover, this conclusion is consistent with the decisions of *In re Cook*[25] and *In re Roberts*.[26] *In re Roberts* established the two-part definition of disinterestedness which the court adopted in *In re Cook*:

(1) to possess or assert any economic interest that would tend to lessen the value of the bankruptcy estate or that would create either an actual or potential dispute in which the estate is a rival claimant; or (2) to possess a predisposition under the circumstances that render such a bias against the estate.[27]

Furthermore, Judge Mosier of this Court stated that the "term disinterested is broad enough to exclude an attorney with some interest or relationship that would even faintly color the independence and impartial attitude required by the Code and Bankruptcy Rules."[28]

The Court is concerned about the disinterestedness and even the perceived lack of disinterestedness of the Applicant under the standards and case law cited above. The Debtor's schedules show a number of other entities, with the same mailing address as the Debtor, in which the Bates have an ownership interest, including: JL Building, Point Belleview, RT Building, and WV Building. This interrelatedness of the Debtor, the Debtor's principals, and creditors of the Debtor should have alerted

---

**24.** There may be some situations where accepting fees directly from an equity owner or creditor for representing a business entity in chapter 11 would be acceptable, but these are would be very rare. However, the principal may be the only one willing to contribute payments. One possible method of avoiding this predicament would be to allow the principals to make a well-documented loan or equity contribution to the proposed chapter 11 debtor with full disclosure of the terms and conditions of such arrangement filed with the petition. That was not done in this case.

**25.** 223 B.R. 782 (10th Cir. BAP 1998) (holding that disgorgement of all fees is warranted where the attorney's application for appoint-

ment failed to disclose a contingent fee arrangement with a creditor).

**26.** 46 B.R. 815 (Bankr.D.Utah 1985), *aff'd in part and rev'd in part on other grounds*, 75 B.R. 402 (Bankr.D.Utah 1987) (en banc) (holding that nondisclosure of potential conflicts alone justifies the court's exercise of discretion to deny all fees).

**27.** 223 B.R. at 789 (quoting *In re Roberts*, 46 B.R. at 827).

**28.** *Rushton v. Woodbury & Kesler, P.C., et al.* (*In re C.W. Mining Co.*), 440 B.R. 878 (Bankr. D.Utah 2010).

the Applicant to investigate further. This is especially true where a manager of these entities (Steve Bates), as scheduled creditors, was paying the Applicant.[29]

The Court elects to take notice of other court submissions on its docket, namely proofs of claims filed in this case that are signed by Steve Bates, one of the Debtor's principals.[30] These proofs of claims constitute the vast majority of unsecured claims in this case. It is uncertain whether all of these claims are or have been allowed. Nevertheless, the claims were all signed by Steve Bates in a managerial capacity, or on behalf of himself, and a proof of claim carries with it certain presumptions of its allowability and accuracy. Steve Bates' involvement with these entities as creditors raises serious concerns as to his personal payment to the Applicant for services rendered on behalf of the Debtor.

The Court again finds *In re Smitty's Truck Stop, Inc.* helpful, where the BAP held that the failure to disclose a potential conflict of interest warranted denial of all compensation.[31] The BAP commented on the duty of counsel to investigate the source of all payments finding that:

> [The applicant] failed to inform the Court of the source of the retainer funds

in his 2016(b) statement, his affidavit and application for employment, and his first and amended fee applications. It was not until the hearing on the amended fee application that the Appellant orally recited to the Court the source of the funds.

From this information, the BAP concluded that the bankruptcy court was correct in its holding that, whether the attorney realized it or not, he had received cash collateral belonging to a creditor as a retainer.[32] Therefore, the BAP agreed with the bankruptcy court that this failure to investigate and disclose the conflicting claims to the funds required denial of fees.[33]

Similarly, here the Applicant did not disclose the source of the retainer in its Application to Employ, affidavit accompanying the Application to Employ, initial disclosure statement on December 1, 2008, or Fee Application. Upon a review of the docket, it appears that the retainer amount was not disclosed until the Application to Employ filed December 10, 2008 stated that the Applicant had received a $13,000 retainer to represent the Debtor.[34] The Applicant did not disclose that the retainer funds were received from the Bates until

---

29. The Bates may not have been as forthcoming as they should have to the Applicant at the initial stages of the case so that the Applicant could have investigated further as to whether taking a retainer from the Bates would affect its disinterestedness. However, there were enough red flags indicating that the Bates had significant involvement with the Debtor which the Applicant could have ascertained.

30. See *St. Louis Baptist Temple, Inc., v. FDIC.* 605 F.2d 1169 (10th Cir.1979); *Zimomra v. Alamo Rent–A–Car, Inc.,* 111 F.3d 1495 (10th Cir.1997). These proof of claims are summarized in the Chart on page 8.

31. 210 B.R. 844 (10th Cir. BAP 1997).

32. *Id.* at 850.

33. *Id.* at 850–51.

34. Representing a debtor that has converted to a chapter 7 from a chapter 11 case is different than representing the estate in the chapter 11. A trustee is appointed in a chapter 7 case and supplants the debtor in possession's management and generally has his or her own separate and new counsel which must be independently appointed by the Court. Accordingly, being paid by principals following conversion to a chapter 7 may not be as critical as when the case is proceeding in chapter 11. The main issue in the present case relating to disinterestedness is that the Applicant received the initial retainer from the Bates directly for chapter 11 services for this limited liability company.

the first supplemental disclosure statement was filed on April 16, 2010.[35]

Additionally, the Court finds the Ninth Circuit case *Neben & Starrett, Inc. v. Chartwell Financial Corporation (In re Park–Helena Corp.)* [36] on point and instructive to the case at hand despite its origination from another circuit. In *In re Park–Helena Corp.*, the Ninth Circuit completely denied fees where an attorney failed to reveal that his retainer was paid from the personal account of the debtor's president rather than from the corporate debtor.[37] The Ninth Circuit found that "[r]egardless of whether the funds used to pay the retainer were, in some sense, [debtor's] funds, the question here is whether [the attorneys'] failure to provide the details of the payment constitutes a violation of the section 329 and Rule 2016 disclosure requirements. We hold that it does." [38] The court held that the attorney's "failure to describe the transaction and indicate that [the debtor's president] paid the retainer out of his personal account constitutes a violation of 11 U.S.C. § 329 and Fed. R. Bankr.P. 2016." [39]

The Applicant makes the argument that it complied with Utah's Code of Professional Conduct in receipting and applying all funds from the Bates. The Court is not persuaded that complying with the state law only is sufficient, as federal law governs in this situation. A bankruptcy court in the District of New Jersey stated: "Not only are state ethical laws imposed upon professionals in the bankruptcy context, but the Bankruptcy Code and Federal Rules of Bankruptcy Procedure contain specific references and directives imposing additional ethical obligations upon attorneys and other professionals." [40] The Court is persuaded to apply that holding here. Accordingly, state imposed professional standards underlie all relationships between an attorney and client, and in addition, the Bankruptcy Code and Rules impose standards.

Professionals in bankruptcy cases are placed under the microscope by various sections of the Bankruptcy Code. Here, the Applicant has unfortunately subjected itself to further scrutiny by accepting the initial retainer from the Bates directly. On one hand, the Applicant had court approval to represent South Station. On the other hand, the Applicant was being paid by the Debtor's equity owners, one of whom was a creditor in the case and both equity owners were controlling owners of creditors of the Debtor which had sizeable stakes in the outcome of this chapter 11 case. As a result, the Court cannot find or conclude that this arrangement meets the test of disinterestedness as mandated by §§ 327(a) and 328(c).

### C. *Denial of Fees and Costs under § 329(b) and § 328(c)*

■ The Court does not approve the Fee Application due to the Applicant's failure to fully disclose all compensation received and because the Applicant accepted payment from a creditor in this case, Steve Bates, the co-principal of South Station and manager of numerous related creditor entities. Section 329(b) provides the remedy when compensation requested or paid

---

**35.** Disclosure of Compensation of Attorney for Debtor, Docket # 211.

**36.** 63 F.3d 877 (9th Cir.1995).

**37.** *Id.* at 880–81.

**38.** *Id.* at 881.

**39.** *Id.*

**40.** *Baron & Budd, P.C. v. Unsecured Asbestos Claimants Comm.*, 321 B.R. 147, 164 (Bankr. D.N.J.2005) (quoting 8 Collier on Bankruptcy ¶ 8.02).

"exceeds the reasonable value of any such services." Section 329(b) states:

> If such compensation exceeds the reasonable value of any such services, the court may cancel any such agreement, or order the return of any such payment, to the extent excessive, to—
>
> (1) the estate, if the property transferred—
>
> (A) would have been property of the estate; or
>
> (B) was to be paid by or on behalf of the debtor under a plan under chapter 11, 12, or 13 of this title; or
>
> (2) the entity that made such payment.

▆▆▆ Furthermore, " 'reasonable compensation for services rendered' necessarily implies loyal and disinterested service in the interest for whom the claimant purported to act." [41] An attorney who fails to disclose "forfeits any right to receive compensation for services rendered on behalf of the debtor and may be ordered to return fees already received." [42] "The Court may sanction failure to disclose 'regardless of actual harm to the estate.' " [43]

Section 328(c) provides the consequences for a finding of a lack of disinterestedness under § 327:

> [T]he court may deny allowance of compensation for services and reimbursement of expenses of a professional person employed under section 327 or 1103 of this title if, at any time during such professional person's employment under section 327 or 1103 of this title, such professional person is not a disinterested person, or represents or holds an interest adverse to the interest of the estate with respect to the matter on which such professional person is employed.

Here, the Applicant attached invoices to the Fee Application detailing the work performed on behalf of South Station. However, the Court cannot award the Applicant its fees and costs requested where: (1) the Applicant failed to fully disclose prepetition and post-conversion payments to the Applicant; (2) the evidence provided to illustrate the remaining amount in the Applicant's trust account is unclear; (3) the Applicant failed to disclose the source of prepetition payments for over a year; and/or (4) a question exists as to the Applicant's disinterested service to the Debtor. Thus, the Court determines that all fees and costs requested in the Fee Application should be disallowed and denied.

### D. *Disgorgement of Retainer and Postpetition Payments*

▆▆▆ The Chapter 7 Trustee argues for the disgorgement of all payments made by the Bates to the Applicant in addition to denying the Fee Application. It appears that the Trustee is relying on § 329(b) for that argument. Section 329(b) provides that "if such compensation exceeds the reasonable value of any such services, the court may cancel any such agreement, *or order the return of any such payment,* to the extent excessive . . ." (emphasis add-

---

41. *In re C.W. Mining, Co.*, 440 B.R. 878, 890 (Bankr.D.Utah 2010) (quoting *Gray v. English*, 30 F.3d 1319, 1322 (10th Cir.1994)) (internal citations and quotations omitted).

42. *In re Smitty's Truck Stop, Inc.*, 210 B.R. 844, 848–49 (10th Cir. BAP 1997) (internal citations omitted); see also *Quiat v. Berger (In re Vann)*, 136 B.R. 863, 873 (D.Colo.1992) (under abundant case law, noncompliance with Rule 2016(b) will support the total denial of fees); In re *Maui 14K, Ltd.*, 133 B.R. 657, 660 (Bankr.D.Haw.1991) (failure of counsel to obey mandate of § 329 and Rule 2016 concerning disclosure is basis for denying compensation and ordering return of fees already paid).

43. *In re Smitty's Truck Stop, Inc.*, 210 B.R. at 849 (quoting *In re Maui 14K, Ltd.*, 133 B.R. at 660).

ed). Section 329(b) deals only with the situation where the court finds the fees to be excessive and moreover, it is in the court's discretion to order disgorgement.

No evidence or argument was made that the requested fees were excessive. Further, the money paid came directly from the Bates and would not have been property of the estate. Accordingly, the Court denies the request to order any disgorgement but will address that issue if the Bates so request.

## VI. CONCLUSION

Based on the foregoing and the Court's analysis stated, the Fee Application should be denied in its entirety for failure to fully disclose the source and amount of compensation received; failure to provide an accurate accounting of compensation received; and/or failure to adhere to the requirements of disinterestedness mandated by the Bankruptcy Code. A separate order will accompany this Memorandum Decision.